An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-370

Filed 18 February 2026

Franklin County, No. 17JT000021-340

IN RE: S.J.

Appeal by respondent-mother from order entered 16 December 2024 by Judge S. Katherine Burnette in Franklin County District Court. Heard in the Court of Appeals 27 January 2026.

> *Holly W. Batten for petitioner-appellee Franklin County Department of Social Services.*
>
> *Hartzog Law Group LLP, by Katherine Barber-Jones, for appellee guardian ad litem.*
>
> *Respondent-appellant mother, pro se.*

PER CURIAM.

Mother appeals from the trial court's order terminating her parental rights to her minor child, Sally.[1] After careful review, we dismiss Mother's appeal.

## I.     Background

---

[1] We refer to the juvenile by a pseudonym to protect her identity. *See* N.C.R. App. P. 42(b).

On 4 April 2017, the Franklin County Department of Social Services ("DSS") filed a petition alleging that one-week-old Sally was a neglected and dependent juvenile. The petition alleged that Mother was "not receiving mental[-]health treatment for her bi-polar [disorder], schizophrenia and paranoia which [wa]s affecting her ability to provide appropriate care for [her] newborn," (capitalization omitted), and that she had "exhibited erratic behaviors" in the hospital. The petition also stated that Mother was involuntarily committed after giving birth to Sally.

After multiple continuances, the petition came on for hearing on 23 April 2018. In an order entered on 10 July 2018, the trial court adjudicated Sally to be a neglected and dependent juvenile, finding that Mother "had untreated mental health issues" and that there were no family members willing to assume the responsibility of caring for and supervising Sally. The disposition hearing was held on 13 February 2019, and in an amended order entered on 15 July 2019, the court made reunification the primary permanent plan and adoption the secondary permanent plan, and ordered Mother to continue mental health treatment, "demonstrate good parenting, . . . and maintain a home free of domestic violence." The court granted Mother a minimum of two hours per week of supervised visitation.

On 28 January 2022, Mother sent five identical text messages to a DSS case worker that read: "Guns get sold on the streets I hope you know that and they don't sell for much, so what make you think I'm going to keep letting y'all hurt my kids." She also sent an email to and left a voicemail for the DSS case worker with similar

messages. As a result, Mother was ordered to abide by certain protocols in order to gain admittance to DSS property and her visitation with Sally was terminated.

The trial court did not conduct another permanency planning hearing until 7 February 2023. The hearing was held over multiple dates and concluded on 19 May 2023. On 27 June 2023, the court entered its order, finding that Mother had "failed to make progress on demonstrating that she [had] learned skills" from her multiple therapists, that her "mental health continue[d] to regress" such that it affected Sally's safety, and that she "continue[d] to believe that she [had] done nothing wrong and that her actions ha[d] not contributed at all to [DSS] obtaining custody of" Sally. The court eliminated reunification as the primary permanent plan, replaced it with adoption, and set a secondary permanent plan of guardianship.

On 30 October 2023, DSS filed a motion to terminate Mother's parental rights, alleging that Mother had neglected Sally, that Sally was and would continue to be a dependent juvenile, and that Mother had willfully left Sally in foster care for more than 12 months by failing to make reasonable progress in correcting the conditions that led to Sally's removal. The motion came on for hearing on 7 February 2024, continuing on several other dates and ending in a special session on 4 November 2024. On 16 December 2024, the trial court entered its order, finding that Mother had failed "to comply with and complete her plan with [DSS] to address [her] longstanding serious mental health diagnoses," not followed her prescribed medication regimen, "[d]emonstrated emotional instability by communicating threats to social workers

and accusing [DSS] and Time Together [(a supervised visitation and exchange center)] of sex trafficking her children," and showed "emotional dysregulation by repeatedly emailing [a DSS social worker] at all hours of the night accusing the director of [DSS] of sex trafficking [Sally]."

The trial court concluded that clear, cogent, and convincing evidence supported three grounds for termination: that, pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (2023), Mother had neglected Sally; that, pursuant to *id.* § 7B-1111(a)(2), she had "willfully left [Sally] in foster care for more than 12 months without showing to the satisfaction of the court that reasonable progress ha[d] been made in correcting those conditions[ ] which led to the removal and placement of [Sally]"; and that, pursuant to *id.* §7B-1111(a)(6), Mother was "incapable of providing for the proper care and supervision of [Sally], such that [Sally] [wa]s a dependent juvenile within the meaning of [*id.* §] 7B-101(9)." The court further determined that it was in Sally's best interest that Mother's parental rights be terminated, and accordingly ordered them so terminated.[2]

Mother filed timely notice of appeal, although the record does not indicate that she served copies of this notice on the other parties. She received appointed counsel to represent her on appeal; however, on 18 April 2025, appellate counsel filed a "Motion to Allow Appellate Counsel to Withdraw" at the request of Mother, who

---

[2] The trial court also terminated the parental rights of Sally's father, who is not a party to this appeal.

preferred to represent herself. On 29 April 2025, this Court allowed the motion and Mother has represented herself on appeal since that date.

## II.    Discussion

This Court's review is significantly hindered by Mother's numerous violations of the North Carolina Rules of Appellate Procedure and the rambling and incoherent nature of her appellate brief.[3]

"Only those who properly appeal from the judgment of the trial divisions can get relief in the appellate divisions. The Rules of Appellate Procedure are mandatory and failure to follow the rules subjects an appeal to dismissal." *Northwood Homeowners Ass'n v. Town of Chapel Hill*, 112 N.C. App. 630, 632, 436 S.E.2d 282, 283 (1993) (citations omitted). Even so, not all violations of the Rules are equally serious. Violations of nonjurisdictional requirements—those "designed primarily to keep the appellate process flowing in an orderly manner"—do "not ordinarily give rise to the harms associated with review of unpreserved issues or lack of jurisdiction." *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 198, 657 S.E.2d 361, 365 (2008) (cleaned up). "[O]nly in the most egregious instances of nonjurisdictional default will dismissal of the appeal be appropriate." *Id.* at 200, 657

---

[3] The Rules of Appellate Procedure allow for a reply brief which is "limited to a concise rebuttal of arguments set out in the appellee's brief and shall not reiterate arguments set forth in the appellant's principal brief." N.C.R. App. P. 28(h). "[A] reply brief does not serve as a way to correct deficiencies in the principal brief." *Cox v. Town of Oriental*, 234 N.C. App. 675, 678, 759 S.E.2d 388, 390 (2014) (cleaned up). Thus, for the purposes of this opinion, we confine our evaluation to Mother's principal appellate brief.

S.E.2d at 366.

The Rules allow this Court to "impose a sanction against a party" upon a determination that such party "substantially failed to comply with these [R]ules." N.C.R. App. P. 25(b). When determining whether a Rules violation "rises to the level of a substantial failure," we consider "whether and to what extent the noncompliance impairs [our] task of review and whether and to what extent review on the merits would frustrate the adversarial process." *Dogwood*, 362 N.C. at 200, 657 S.E.2d at 366–67. The sanctions permitted by Rule 34 include, *inter alia*, "dismissal of the appeal." N.C.R. App. P. 34(b)(1).

Mother's appellate brief contains numerous violations of subsections of Rule 28, which sets out the required content and form of an appellant's brief. *See* N.C.R. App. P. 28(b). We address each subsection in turn.

### *Statement of the Issues Presented*

An appellant's brief must contain "[a] statement of the issues presented for review." N.C.R. App. P. 28(b)(2). Here, Mother's statement of the issues presented reads: "The trial court erred, in pursuant to N.C. Gen Stat. Laws in granting the defendant's proceedings, to the plaintiff's claims that the defendant's actions are illegal and unconstitutional." This statement fails to frame the issues for which Mother seeks appellate review.

### *Statement of the Case*

Additionally, an appellant's brief must include "[a] concise statement of the

procedural history of the case. This shall indicate the nature of the case and summarize the course of proceedings up to the taking of the appeal before the court." N.C.R. App. P. 28(b)(3). While Mother has included a section in her brief titled "Statement of the Case," it is merely a collection of the titles of documents in the record and the associated dates, in no way conforming to the requirements of Rule 28(b)(3). This constitutes neither "[a] concise statement of the procedural history of the case" nor a summary of "the course of proceedings up to the taking of the appeal." *See id.*

### *Grounds for Appellate Review*

N.C.R. App. P. 28(b)(4) requires that the appellant's brief contain "[a] statement of the grounds for appellate review. Such statement shall include citation of the statute or statutes permitting appellate review." Mother includes this section, yet she cites N.C. Gen. Stat. § 7B-1100. This section sets out the legislative intent and construction of Article 11, which governs the termination of parental rights; this section provides no grounds for appellate review. *See* N.C. Gen. Stat. § 7B-1100.

### *Statement of the Facts*

An appellant's brief must also provide "[a] full and complete statement of the facts. This should be a non-argumentative summary of all material facts underlying the matter in controversy which are necessary to understand all issues presented for review, supported by references to pages in the record on appeal." N.C.R. App. P. 28(b)(5). Here, as DSS notes and our review confirms, Mother's statement of facts has

"sparse" citations, "and often not to the Record"; it "also contains argumentative statements."

*Standard of Review*

The Appellate Rules require that the appellant's argument "contain a concise statement of the applicable standard(s) of review for each issue, which shall appear either at the beginning of the discussion of each issue or under a separate heading placed before the beginning of the discussion of all the issues." N.C.R. App. P. 28(b)(6). In addition, "the statement of applicable standard(s) of review shall contain citations of the authorities upon which the appellant relies." *Id.*

In the present case, Mother has two sections titled "Standard [of] Review," both of which state that this Court must apply "a reversal standard of review." Additionally, the first section alleges that a "[j]uvenile order is necessary for reversal in judgment when an opposing side evidence shows the trial court no abuse, no neglect or no dependency." The second section contains an almost identical allegation. None of these statements represent the correct standard of review in Mother's case. *See In re S.R.*, 384 N.C. 516, 520–521, 886 S.E.2d 166, 171 (2023).

*Argument*

Finally, an appellant's brief must present

> [a]n argument, to contain the contentions of the appellant with respect to each issue presented.
>
> . . . .

> The body of the argument . . . shall contain citations of the authorities upon which the appellant relies. Evidence or other proceedings material to the issue may be narrated or quoted in the body of the argument, with appropriate reference to the record on appeal, the transcript of proceedings, or exhibits.

N.C.R. App. P. 28(b)(6).

Mother does not address the order from which she appeals, which terminated her parental rights to Sally, until the last few pages of her brief. Her statements consist primarily of bare denials of the trial court's conclusions of law: "I . . . have not neglected my children within the mean[ing] of N.C. Gen. Stat. [§] 7B-101(15)"; "[I] have not willfully left my children in the foster system for more than 12 months"; "I . . . [am] capable of providing proper care and supervision for my children"; and "It is not in the best interest of [Sally] that [my] parental rights be removed." Beyond these denials, Mother asserts that Sally has "a permanent home right here with [Mother]" and that she and Sally have a "very tight bond that does not need severing," without any citation to the record or caselaw. Mother also appears to raise a number of other issues in her argument section; however, she fails to explain how any of these issues relate to the order from which she has appealed, nor does she cite the authorities upon which she presumably relies.

"The function of all briefs . . . is to define clearly the issues presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions." N.C.R. App. P. 28(a). "Issues not

presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C.R. App. P. 28(b)(6). "It is not the role of the appellate courts . . . to create an appeal for an appellant." *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361, *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005).

After careful deliberation, we conclude that Mother's failure to present an argument in conformity with Rule 28(b) rises to the level of "a default precluding substantive review" of her appeal. *Dogwood*, 362 N.C. at 200, 657 S.E.2d at 367. Additionally, her brief "frustrate[s] the adversarial process" by failing to provide an argument to which the appellees could properly respond. *See id.* at 200, 657 S.E.2d at 366–67. Accordingly, we dismiss Mother's appeal.

## III.   Conclusion

For the foregoing reasons, we dismiss Mother's appeal.

DISMISSED.

Panel consisting of: Judges ZACHARY, ARROWOOD, and WOOD.

Report per Rule 30(e).